The Illinois Central Railroad Company

*v.*

Israel R. Patterson.

1. Practice—*a plea to merits waives a demurrer to the declaration.* Where a demurrer to each count of a declaration containing two counts, is sustained to the first, and the plaintiff amends his first count, and, by leave, files an additional count, the filing of a plea to the whole declaration is a waiver of the demurrer, and it can not be assigned for error that the court did not decide it as to the second count.

2. Railroads—*duty of, in respect to track.* A railway company is bound to keep its track and road in a safe and sound condition, in order to secure the safety of all persons who may be lawfully upon it, either as passengers or servants.

3. Contributory negligence. Although a railway company may suffer its track to be out of proper repair, yet if a servant, an engineer of the company, drives his engine at a negligent or high rate of speed, which materially contributes to an injury received by him, he can not recover of the company.

4. Thus, where the engineer was running his train at a much greater rate of speed than was allowed, for making up lost time, and in consequence of this, and a battered rail on a curve, the train was thrown from the track, and the engineer was severely injured, it was *held*, that, owing to his own reckless conduct, he could not hold the company responsible for damages.

Appeal from the Circuit Court of Lee county; the Hon.. William W. Heaton, Judge, presiding.

Mr. J. M. Bailey, and Mr. J. I. Neff, for the appellant.

Messrs. Eustace, Barge & Dixon, for the appellee.

Mr. Justice Craig delivered the opinion of the Court:

This was an action on the case, brought by appellee against appellant, in the circuit court of Lee county.

The cause was tried by a jury, and a verdict rendered in favor of appellee for $9000. A motion for a new trial, and also in arrest of judgment, were made, and overruled, and judgment entered upon the verdict.

The declaration contained two counts, to each of which appellant demurred. The demurrer was sustained to the first count, but it is claimed no order was made in regard to the demurrer to the second count.

The court gave appellee leave to amend the first count. and file an additional one, which was done, after which appellant filed a plea of the general issue to the whole declaration.

Appellant insists that the court erred in trying the cause and rendering judgment without deciding the demurrer to the second count of the declaration.

When appellant filed its plea to the whole declaration, the demurrer was waived, and it was immaterial whether the court

formally disposed of the demurrer or not. *Cobb* v. *Ingalls*, Breese, 233; *Grier* v. *Gibson*, 36 Ill. 521.

The second point relied upon by appellant is, the verdict is against the preponderance of the evidence.

The action was brought to recover damages for an injury received by appellee on the 8th day of February, 1870, while in the employ of appellant. At the time of the accident, appellee was in charge of an engine attached to a passenger train on appellant's road, running from Amboy to Wapella. When the train was about one mile north of LaSalle, the engine and train ran off the track, appellee was thrown under the cars, and his leg injured in such a manner as to require amputation.

The main question involved in the case, and submitted to the jury, was, the real cause of the accident. On the one hand, it was claimed by appellee that a rail in appellant's road, where the accident occurred, was negligently allowed to become worn and splintered, and that, in consequence of such defective rail, the train was thrown off the track.

On the other hand, it is insisted by appellant that, at the time of the accident, appellee was driving the engine at a high and reckless rate of speed, and that the injury was occasioned by the negligence of appellee in that regard.

The law is well settled, that a railroad company is bound to keep its track and road in a safe and sound condition, in order to secure the safety of all persons who may lawfully be upon it, either as passengers or servants. *C. and N. W. R. R. Co.* v. *Swett*, 45 Ill. 203; *I. C. R. R. Co.* v. *Welch*, 52 ib. 184.

But while this was an obligation resting upon the company, it was the duty of appellee to so drive the engine as not to endanger the lives of passengers upon the train, or imperil his own safety; and if he drove the engine at a negligent or too high rate of speed, which materially contributed to the injury he received, then he can not recover.

It appears, from the evidence, that from Cool Track to La-Salle, the railroad track is upon a descending grade for a

distance of three miles, and the accident occurred while the train was upon a short curve in the road, on this down grade.

It appears that a rail upon the track had been battered or flattened by the trains passing over it. The depression in the rail seems to have been one-quarter of an inch deep, and extending near one foot in length, upon the surface of the rail.

The section hands in charge of that part of the road had been in the habit of passing over it daily to keep it in repair, and had passed over the road on that day, but had not discovered the defect in the rail.

The time table of appellant shows that the running time of passenger trains from Mendota to LaSalle was twenty-five miles per hour.

It is a fact, upon which there is no dispute, that the train upon which the accident occurred was behind time. They left Amboy one hour late; made up fifteen minutes in running to Mendota; left there forty-five minutes late.

It is also clear, the engine-driver was running the train at a faster rate of speed than was prescribed by the time table, for the purpose of making up lost time. It is also a fact, upon which there is and can be no dispute, that a train running at a high rate of speed, is more likely to run off the track, than when it is running at the usual rate of twenty or twenty-five miles per hour.

On the part of appellee, it is claimed, that when the accident occurred, the train was running at the rate of thirty miles per hour. Upon this point, he and his fireman are the only witnesses by him produced, and they clearly state the rate of speed of the train was but thirty miles per hour.

On the other hand, appellant introduced upon this point five witnesses, three passengers, and the conductor, and the man in charge of the track, who saw the train when the accident occurred. All of these five witnesses testify that the train was running at the rate of from forty to forty-five miles per hour.

These passengers testify that the rapid rate of speed of the train attracted their attention, as well as others upon the train, and two of them took out their watches and timed the train, as it passed the mile posts upon the track. One of the witnesses, a Mr. Taft, says: "The speed of the train, the first mile I timed it, was nearly one minute and a half; then it grew faster. The men knew I was timing the train with them. I called the mile posts for them. The first mile was made in nearly one minute and a half, and then it grew faster. I stopped immediately before the accident, and had not sat down. The highest rate of speed was one mile in one minute and twenty-six seconds; that was the last mile I timed."

The evidence of the two other passengers is equally as pointed and strong as that of Mr. Taft; other passengers on the train, besides the three, observed the rapid speed of the train, and took part in timing it.

If the evidence of these five witnesses is reliable, and we can, from the record, perceive no reason for disbelieving their statements, or impugning their integrity, then the weight of evidence is clearly against appellee.

There is nothing in the record to overcome the force and effect of the testimony of these five witnesses, as to the origin and cause of the accident, who are all disinterested in the result of the suit, except the testimony of appellee, who has a direct interest, and his fireman, who had no better means of judging of the speed of the train than any of the other witnesses.

Such being the condition of the record, we are aware of no rule of law or justice that would justify us in permitting the judgment to stand.

If the accident and consequent injury were caused by the reckless rate of speed at which appellee drove the engine, and of this there can not be a well founded doubt, then, under the circumstances of this case, he ought not to recover.

The safety of the passengers and appellee's fellow servants on the train were, to a great extent, committed to his charge,

and it would be contrary to public policy and every principle of justice to permit him to recover, while the weight of the evidence shows that the injury he received was caused by his own reckless act.

We are of opinion that the judgment should be reversed.

*Judgment reversed.*