Filed April 26, 1889.

---

No. 12,543.

THE CINCINNATI, INDIANAPOLIS, ST. LOUIS AND CHICAGO RAILWAY COMPANY v. LANG, ADMINISTRATRIX.

MASTER AND SERVANT.—*Railroad.*—*Section Hand.*—*Special Service.*—*Injury by Wild Train.*—*Liability of Master.*—Where a railroad company orders a section hand to go to a designated place upon the road and there perform a special service, it is liable for an injury caused to him, without his fault, while proceeding to the designated place, by the hand-car upon which he is riding coming in collision, at a short curve, with a wild train of the running of which he is not notified, and of the approach of which no warning is given, the danger to which he is thus exposed not being one of the ordinary risks of the service which he assumes.

SAME.—*Rule Governing Employees.*—*Disobedience of Order.*—*When Master not Liable.*—But where the railroad company has adopted and promulgated a rule requiring section hands to be prepared at all times for special or irregular trains, and where the injury occurs at a place beyond that to which the special order directed the employee to go, the company is not liable.

From the Dearborn Circuit Court.

*J. D. Haynes, J. K. Thompson, T. A. Hendricks, C. Baker, O. B. Hord, A. W. Hendricks, A. Baker* and *E. Daniels,* for appellant.

*J. S. Scobey,* for appellee.

ELLIOTT, C. J.—The material allegations of the appellee's complaint are these : That her intestate, Jacob Lang, was in the service of the appellant as a section hand on the 14th day of December, 1884, and had then been in its service for twelve months ; that the foreman under whom he worked was Nicholas Lang; that on Sunday, the 14th day of December, 1884, the appellant directed its section foreman, Nicholas Lang, to take his crew of hands and repair a part of its track not far from the town of Weisburg, and that, pursuant to the order, the foreman caused his crew, of which the deceased was one, to get upon a hand-car and proceed to the place indicated ; that the hand-car was operated with due care and caution, and was run in a safe and prudent manner ; that on Sunday, the 14th day of December, the day on which the foreman, Nicholas Lang, was directed to make repairs, the appellant sent on the railroad from Indianapolis a locomotive and car destined to the city of Cincinnati, and that it neglected to give any notice that the engine and car had been sent out upon the road ; that the crew of the hand-car in charge of foreman Lang, when near a short curve, were suddenly met by the engine and car approaching from the opposite direction ; that the engine and car were running at the rate of fifty miles an hour ; that, upon seeing the engine and car approaching, foreman Lang and his crew stopped the hand-car as soon as it was possible to do so, and the intestate at once alighted from it; that the engine struck the hand-car and threw it against him, and so injured him as to cause his death within two hours ; that no whistle was sounded or other signal given by the engineer; that, by reason of the curve in the track, the approach of the engine and car could not be seen in time to escape collision ; that the intestate, by

the use of the utmost diligence and care, could do no more than alight from the hand-car near the side of the track where he was when the hand-car was thrown upon him;. that the locomotive and car composed a wild or irregular train, running without a time-table and at the pleasure of those controlling it; that it was the duty of the defendant to have given information of the wild train to the foreman and men composing the hand-car crew; that the persons operating that ·train and the train dispatcher were incompetent, and that the defendant was guilty of negligence in employing and in retaining them; that the injury to the intestate was caused by the negligence of the defendant, and without fault on his part.

The complaint states a cause of action. The appellant, by special order, directed the intestate to go to a designated place and there perform service in the line of his duty, and the appellant did not, by notice, rules or instructions, make any provision for his safety while obeying its order. It was bound to know the nature of the service it had ordered him to perform, the place where it was required to be performed, and, with this knowledge, it had no right to put him in peril by sending out an irregular train without in some way giving notice that its train had been sent out, or by so regulating its speed and management as to prevent injury to those engaged in the service required of them by the special order. By the order of the appellant the special duty in which the intestate was engaged was enjoined upon him, and having thus required him to perform the duty, it had no right to send over its road a train which the employees, engaged as was the intestate, had no reason to expect would make obedience to the special order unusually perilous. It may be true that the intestate was bound to know of the danger from regular trains, running according to time-tables or rules, and yet not be true that he was bound to know that a wild or irregular train would be run over the road, and so run as to bring about a collision. The peril from the wild

train he was not bound to anticipate, for the reason that, from the assurance impliedly contained in the special order assigning a designated duty to him, he had a right to assume, in the absence of countervailing facts, that, if he himself exercised care and diligence, the company would not send out a wild train without exercising ordinary care and diligence to prevent injury to him while travelling in the usual way to the place where he was called by the duty assigned him, and while performing that duty at the place designated. It can not be justly asserted, under the averments of the complaint, that the danger to which the company exposed him was one of the ordinary risks of the service which he assumed. In affirming that the facts stated in the complaint constitute a cause of action, we do not depart from the general rule that the employee assumes the ordinary risks incident to his service, declared in *Indianapolis, etc., R. W. Co.* v. *Watson,* 114 Ind. 20 (5 Am. St. 578), *Louisville, etc., R. W. Co.* v. *Sandford,* 117 Ind. 265, and many other cases. What we decide is, that the facts stated in the complaint make a case belonging to a different class, for, as the intestate was assigned to a special duty by a special order, and it does not appear that there were any rules requiring section men to guard against irregular trains, nor any care taken, either by regulating the speed of the wild train or by notice, to provide for his safety, and it does appear that he was himself entirely without fault, the peril he was subjected to from the irregular train can not be regarded as one of the ordinary risks incident to the service he had entered. On the admitted facts there is a *prima facie* case against the appellant. *Cincinnati, etc., R. W. Co.* v. *Long,* 112 Ind. 166 ; *Coombs* v. *New Bedford Cordage Co.,* 102 Mass. 572 ; *Haley* v. *Case,* 142 Mass. 316 ; *Goodfellow* v. *Boston, etc., R. R. Co.,* 106 Mass. 461 ; *Crowley* v. *Burlington, etc., R. W. Co.,* 65 Iowa, 658 ; *Abel* v. *President, etc.,* 103 N. Y. 581 ; *Reagan* v. *St. Louis, etc., R. W. Co.,* 93 Mo. 348 ; *Lewis* v. *Seifert,* 116 Pa. St. 628.

The duty of providing for the safety of employees rests on the employer, and can not be delegated. In this instance the duty of exercising reasonable care to prevent injury to the intestate while going to the place where he was ordered, and providing for his security, rested upon the appellant. It was, therefore, the duty of the master that was neglected, and it was this neglect of duty, and not that of a fellow-servant, which caused Jacob Lang to lose his life. *Louisville, etc., R. W. Co.* v. *Buck*, 116 Ind. 566; *Louisville, etc., R. W. Co.* v. *Sandford, supra; Indianapolis, etc., R. W. Co.* v. *Watson, supra; Krueger* v. *Louisville, etc., R. W. Co.*, 111 Ind. 51; *Pennsylvania Co.* v. *Whitcomb*, 111 Ind. 212; *Indiana Car Co.* v. *Parker*, 100 Ind. 181; *Franklin* v. *Winona, etc., R. R. Co.*, 37 Minn. 409 (5 Am. St. 856).

If the master's negligence is the principal cause of the injury, then he will not be absolved from liability, although the negligence of a fellow-servant may have concurred in causing the injury; so that, if it were true that the negligence that caused the collision was in part that of the persons in charge of the wild train, even then the appellant, under the case made by the complaint, would be liable. This conclusion is well fortified by authority. *Franklin* v. *Winona, etc., R. R. Co., supra; Faren* v. *Sellers*, 39 La. Ann. 1011 (4 Am. St. 256); *Cayzer* v. *Taylor*, 10 Gray, 274 (69 Am. Dec. 317); *Paulmier* v. *Erie R. R. Co.*, 34 N. J. L. 151; *Booth* v. *Boston, etc., R. R. Co.*, 73 N. Y. 38 (29 Am. Rep. 97).

The material questions presented by the motion for a new trial are radically different from those presented by the demurrer to the complaint. The application of settled principles of law to the evidence makes it necessary for us to declare that the verdict and judgment can not be sustained. This conclusion is forced upon us by the evidence, which shows, and this without contradiction or conflict, that the appellant had promulgated rules for the government of its employees, and that Jacob Lang was injured at a place beyond the point which the special order directed him to go.

We have not examined the evidence to ascertain whether the appellant's contention upon other points than those mentioned is just, for this we deem it not proper to do, as the conclusion we have reached upon the points named is fatal to the judgment.

One of the rules of the company contained a provision requiring section men " to be prepared at all times for special or irregular trains." This provision not only imparted to the employees notice that irregular trains might at any time be sent over the road, but it also required employees to be at all times prepared for such trains. Jacob Lang, in taking service with the appellant, became bound by the rule, for it is the duty of the railroad company to make rules, and of those in its service to obey them. *Pennsylvania Co.* v. *Whitcomb, supra.* He was, therefore, bound not to enter a curve, where an irregular train might come upon him, without taking precautions to discover its approach and avoid a collision.

Obedience to the rules of a railroad company is, as a matter of law and of high public policy, required from the employees, since without obedience those who travel by railroad would be subjected to greatly increased danger. Disobedience or disregard of rules is always a defence to an action by the servant against the master, unless there are facts which, in the particular instance, excuse the employee or relieve him from the duty of strict obedience. We do not undertake to decide what facts will take a case out of the operation of the general principle which requires adherence to the rules promulgated by the employer, for our work is done when we affirm that in this instance there are no facts which relieved the employee from the operation of the general principle. Conceding, but not deciding, that the special order did relieve him from the operation of this general principle, and did warrant him in assuming that the rule of the company requiring employees to be at all times prepared for irregular trains was suspended for the time, still, the utmost that can be concluded from this concession is, that the protecting effect

of the special order did not extend beyond the place it designated. The effect of the special order, conceding all that can with any plausibility be claimed for it, is completely nullified by the fact that the collision occurred at a place beyond that specified in the order. It can not be asserted, with any trace of reason, that the order led the intestate to presume that the track was safe beyond the place designated in the order itself, even if so much force can be conceded to it. When the hand-car was taken beyond that place the employees ceased to act under orders, and, in truth, were disobeying orders, so that it can not be possible that the order cast any protection about them, or longer gave them any assurance which imposed liability upon their employer.

.We are unwilling to hold that a railroad company, which has made and promulgated rules requiring its employees to be at all times prepared for irregular trains, is bound to give special notice to the section men along the line as each irregular train is sent over the road. There may be cases where special notice is required, but such cases constitute exceptions to the general rule. It is undoubtedly true that the employer must always exercise ordinary. care and diligence to secure the safety of employees, and it is probably true that cases may arise in which ordinary care would require notice to section men along the line of the road. But, whatever may be the rule where special orders are adhered to, and the injury is received in executing them, it is quite clear that a section man injured while going over a part of the road not covered by the special order, can not successfully claim that the employer must respond in damages because he was not notified that a wild train was on the road, destined to a point which would make it traverse the place designated in the special order. If the employee had been at the place so designated we should have a very different case, and one that would require us to decide whether the circumstances were such as to make it the duty of the employer to give special notice.

If there was negligence on the part of the section foreman and of those in charge of the special train, it was that of fellow-servants, and for such negligence the master is not liable. We have many decisions upon this question, and it can not be regarded as open to discussion.

Judgment reversed, with instructions to award a new trial.

Filed May 7, 1889.