CHARLES H. LASKY

*vs.*

THE CANADIAN PACIFIC RAILWAY COMPANY.

Penobscot.    Opinion May 25, 1891.

*Railroad. Negligence. Superintendent. Train-Dispatcher. Law and Fact.*

A railroad corporation is not liable to an employee (in this case an engineer) for an injury happening to him in executing an errand of danger, upon which he is sent by the superintendent of the corporation, unless the superintendent be guilty of negligence in ordering the dangerous act to be performed.

Where a train-dispatcher habitually performs in the name of the superintendent of a railroad, certain duties of such superintendent in his absence, with the assent of the corporation, any order to an employee from such train-dispatcher, within the limit of his delegated authority, imposes upon both

the corporation and employee the same duties and liabilites as if issued directly by the superintendent himself.

The rule that undisputed facts present a question of law rather than of fact is more adapted to questions of contract than to questions of tort.

In negligence cases the rule applies only when the facts are undisputed, and the conclusion to be drawn from the fact is so far indisputable that men could not reasonably differ in their interpretation of them.

ON MOTION AND EXCEPTIONS.

This was an action on the case in which the plaintiff, a locomotive engineer in the defendant's employ, sought to recover damages for personal injuries sustained by him. He claimed that while in the execution of a written special order, regularly issued, and bearing the name of the company's general superintendent requiring him to run his engine regardless of all trains to a certain point west of Moosehead station and rescue a disabled train, he encountered the disabled train not at or near the point stated in the order, to wit : one mile east of Mackamp, but five miles away and easterly of it ; and that in attempting to escape from imminent peril of the impending collision he jumped from his engine and was injured.

The plaintiff contended that the issuing of the order by the superintendent was an act of negligence on the part of the corporation.

The material allegations of the declaration are as follows :  .  .  . "And on the line of said railroad in said Somerset County there was on said July 1st, and still is a station called Mackamp, and another station named Moosehead, situated sixteen and two-tenths miles east of said Mackamp ; and on said July 1st, a train proceeding and running easterly on said railroad and under the care and control of said defendant, called the Montreal Express and No. 201, became disabled at a point on the line of said railroad six miles east of said Mackamp, and was unable without assistance from an engine other than the engine attached to said train to proceed further. And on said July 1st, the plaintiff was in the employ of said defendant corporation, in the capacity of a locomotive engineer, and on said day had charge and control of, and was with locomotive No. 13, belonging to said defendant, at the said station called Moosehead ; and it was

the duty of said plaintiff so as aforesaid in the employ of said defendant, to act in obedience to the orders of said defendant, and it was the duty of said defendant to use due care in regard to its servant, said plaintiff, and not negligently, carelessly or recklessly to expose him to danger and peril unknown to said plaintiff; yet said defendant unmindful and in total disregard of its duty in the premises negligently, carelessly and recklessly sent to said plaintiff, who was ignorant of the location of said disabled train, on the morning of said July 1st, and said plaintiff received from said defendant on the morning of said July 1st, while said plaintiff was so in the employ of said defendant as aforesaid, at said Moosehead, peremptory orders in writing that he (said plaintiff) was required immediately to go and bring said train No. 201, from one mile east of said Mackamp, to said Moosehead, also at the same time, further peremptory orders in writing to run (meaning for said plaintiff to run said engine so under his charge and under his control as aforesaid) from Moosehead aforesaid, to one mile east of said Mackamp, regardless of all trains, and to look out for No. 201, (meaning said disabled train) one mile east of said Mackamp; and said plaintiff not knowing the location of said disabled train, but relying on said written orders, as he had a right so to do, that said disabled train was one mile east of said Mackamp, and that the line of said railroad was free from all obstructions, especially and particularly all obstructions from said disabled train, from said Moosehead to one mile east of said Mackamp, in pursuance and in obedience to said peremptory written orders to him aforesaid, on said July 1st, was running his said engine from said Moosehead to one mile east of said Mackamp, with due care and diligence and without any negligence on his part, and without any warning whatever, came upon said disabled train so situated aforesaid six miles east of said Mackamp, and in a cut which concealed it from view, so suddenly, that it was impossible for him to check the speed of his said engine, in time to prevent a collision with said disabled train, and a collision did then and there occur between his said engine so being run as aforesaid on said July 1st, by plaintiff with due care and diligence and without any negli-

gence on his part and in obedience to said peremptory written orders, and said disabled train, and plaintiff was thereby placed in a situation of imminent peril to his life and limbs, and immediately before said collision actually took place and while his said engine so being run by him as aforesaid was in motion and in close proximity to said disabled train, without any negligence on his part in attempting to escape from this situation of imminent peril to his life and limbs so brought upon him by the negligence, carelessness and recklessness of said defendant as aforesaid said plaintiff jumped from said train so being run by him as aforesaid and thereby then and there was thrown down and over an embankment and into a deep ravine, and then and there by reason thereof was greatly and permanently injured," &c. . . . *Second count*, for not having made and promulgated suitable rules and regulations for flagging or signaling in front of disabled trains.

Under the instructions as given by the court, the defendant's liability under the first count only, was passed upon by the jury.

The order in question, issued in the name of the general superintendent, appeared by the evidence to have been issued by the train-dispatcher from the office of the assistant superintendent of the Moosehead section, at Brownville Junction. The defendant contended, at the trial, that the plaintiff and train-dispatcher were fellow-servants.

Upon this branch of the case, the presiding justice instructed the jury as follows :

"Now, in this case, the general superintendent may be regarded by you as a principal and not as a co-servant, and whatever was done under his direction, under his order, was not done under the order of a co-servant. So, then, in the first place, you will inquire if this order which the plaintiff received from the telegraph office at Moosehead, was the order of the general superintendent. It appeared to be. It was delivered to him as coming from the general superintendent. He received it through the usual channel for orders of that sort to come. The person who gave it to him has testified that he was the train-dispatcher. Rule 31 of the company provides that, "no

special train or engine shall be run without orders from the general superintendent through the train-dispatcher." Now this order came through the train-dispatcher. Was it the order of the general superintendent? I instruct you that, if the superintendent was accustomed to allow the train dispatcher to issue orders of this sort in his name, coming from his office, this order, if issued in accordance with that usage and custom, known and permitted by the general superintendent of the company, would be the order of the general superintendent. In other words, it would be the order of the general superintendent's office, and would have the same effect as though his name was personally signed to it. If he sees fit to allow the business that particularly appertains to him, his particular corporate functions, to be exercised in that way, the persons who act under him must have the same protection as though each one was his own individual and personal act. So then, gentlemen, under these rules I have given you, if you are satisfied that the order was the order of the general superintendent, I instruct you that it was the order of the corporation; and, if the plaintiff received his injury without any fault on his part, while acting under this order and within its scope, then he is entitled to recover."

The jury was also further instructed upon the defendant's liability in issuing the order as follows:

"But if, on the other hand, you are satisfied by a preponderance of the evidence, he was running under the order of the superintendent of this company to one mile east of Mackamp, having due regard to all the information which was in his power and at hand, with due and proper care and caution, and was not in fault himself, then I instruct you that he is entitled to recover."

The defendant excepted to these instructions. There were other exceptions which the full court did not find it necessary to consider.

The jury returned a verdict of $3000, for the plaintiff.

*Wilson and Woodard*, for defendant.

Collision caused by error and mistake, as to location of dis-

abled train, by conductor Cole, a fellow-servant for whose fault
the master is not liable.  *Gibson* v. *R. R.* 2 Am. Rep. 497-9 ;
Pierce, R. R. 358, 359, 362 ;  *Blake* v. *R. R.* 70 Maine, 60 ;
Wood, Mast. & Ser. § 345, p. 705 ;  *Adams* v. *West Roxbury*, 1
Hask. 576.  No want of care by defendant.  *Warner* v. *R. R.*
39 N. Y. (12 Tiffany) 468, 471.  Wood, Mast. & Ser. § 344,
p. 705 ;  *Clarke* v. *Holmes*, 7 Hurl. & Nor. 937, 947.  Reason-
able care in issuing the order.  *Slater* v. *Jewett*, 85 N. Y. 61,
71.  No fault in selection of its agents or giving sufficient in-
formation, &c.  *Ladd* v. *R. R.* 119 Mass. 412, 413 ;  *Buzzell*
v. *Laconia M'fg. Co.* 48 Maine, 113, 121 ;  *Cassidy* v. *R. R.*
76 Maine, 488, 489 ;  *Shanny* v. *Andro. Mills*, 66 Maine, 420,
427.  Defendant had same knowledge as employer.  *Wright*
v. *R. R.* 25 N. Y. 526, 566 ;  understood the nature of the risk,
·*Clark* v. *Holmes, supra* ;  *Coombs* v. *N. B. Cordage Co.* 102
Mass. 572, 585-6 ;  *Hayden* v. *Smithville M'fg. Co.* 29 Conn.
548, 557-8-9, 560, and cases cited.  *Wormwell* v. *R. R.* 79
Maine, 397, and cases cited.  No negligence of defendant inter-
vened between the plaintiff and fault of the conductor.  Con-
sequences which plaintiff must have forseen, and due care by
defendant could not prevent, should not be visited on defendant.
*Farwell* v. *R. R.* 4 Met. 49, 60-1.  Exceptions :  Plaintiff
knew the order came from Brownville Junction train-dispatcher.
Its issue not an act towards plaintiff which the master owes to
his employ to perform personally, but the act of a fellow-
servant ; and plaintiff assumed risks incident to it.  *R. R.* v.
*Fort*, 17 Wall. 553, 558 ;  *Walker* v. *R. R.* 2 Hask. 96.
Questions of negligence are for the jury.  Pierce, R. R. 384,
and cases cited.

*Appleton and Chaplin* for plaintiff.

General superintendent is a vice-principal, and not a fellow-
servant.  Patterson, Ry. Accidents, p. 323 ; Pierce, R. R. p.
368.  Order issued was the act of defendant.  Regular in form,
coming from proper source.  Defendant estopped by its rules
to show it was the act of train-dispatcher only.  Rules are part
of plaintiff's contract of service.  Obedience to the order ex-
acted of employees.  If issued by the servant in the master's

name, held to be defendant's act. Patterson Ry. Accidents, p. 329, § 308. As between a conductor and the superintendent the latter is representative of the company; his orders are the orders of the employer. *R. R.* v. *McLallen*, 84 Ill. 109; Patterson Ry. Accidents, p. 323 and cases cited.

Order was peremptory and extraordinary. *McLeod* v. *Ginther*, 80 Ky. 399. Company bound to know that the statements in it were true. Its issuance an act of negligence *per se.*. Bound to furnish a safe road-bed to one mile east of Mackamp, as it was safe appliances. Cole's negligence was to the company and not to plaintiff. When the master states as true what is not true to his servant, and the servant relying on such statement as true, acts with less caution then he would if such untrue statement had not been made and is injured, the master is liable. Same, where risks are largely increased by act of master, without knowledge of the servant. Order induced plaintiff to relax his vigilance, and not expect to meet disabled train as soon as he did. Company liable although a fellow-servant contributed to the injury. Pierce, R. R. p. 379. Company negligent for not making further inquiry of Cole, before issuing the imperative order. Could have easily located disabled train opposite mile-post No. 238. Due inquiry and investigation are means of protection to employees in perilous occupations. Defendant guilty in these respects.

Aside from the question of due care on plaintiff's part, there were but two questions of fact, (1) was the order, the order of the company; and (2) was the company liable in consequence of such order. In its charge the court says, "The plaintiff charges the defendant with negligence, whereby he received bodily hurt. The defendant corporation denies its negligence and calls upon the plaintiff to prove it. So the plaintiff, before he can recover a verdict at your hands, must satisfy you by a preponderance of the evidence in the case that, he did receive his bodily injuries solely from the negligence of the defendant corporation."

The order being the thing that caused the injuries, and it being found by the jury under proper instructions to be the

order of the company, the only remaining question for the jury was, was it negligently issued; and that fact was duly submitted when the court declared that the plaintiff could not recover unless the injury was caused by the negligence or the fault of the company.

PETERS, C. J.   The plaintiff, on July 1, 1889, was a locomotive engineer in the employ of the Canadian Pacific Railway Company, in charge of a ballasting train at a station on the road called Moosehead.   On the early morning of that day the regular express passenger train running from Montreal to St. John became disabled by an accident to its engine, and was detained at a place about six miles east of another station on the road called Mackamp.   The latter station is about sixteen miles west of Moosehead.   The nearest telegraph station to the disabled train being Moosehead, Cole, the conductor of the train went to that place, and there sent to Brownville Junction, the principal office on that division of the road, the following dispatch:  "From Moosehead, July 1, 1889.   J. H. Van Zile (assistant superintendent).   Broken journal on engine one seventy-four, one mile east of Mackamp.   Please arrange for assistance.                                           Cole."

Somehow unaccountably the distance was given as one mile instead of the true distance, six miles.

After some preliminary action to prevent misunderstanding or mistake, the plaintiff, whose engine was number thirteen, received the following final order:   "Canadian Pacific Railway Company.   Train order from O. S. Brownville Jct.—July 1, '89.

Eng.   Eng. 13.

Moosehead.

Run from Moosehead to one (1) mile east Mackamp regardless of all trains.   Look out for number two ought one (201) with disabled engine, one mile east of Mackamp.

T. A. MacKinnon."

Among the dispatches that were sent preparatory for the final order, the plaintiff had received the following:   "You are required immediately to go and bring train No. 201 from one (1) mile east of Mackamp to Moosehead.   Eng. No. 174 on No.

201, disabled. Conductor Cole will go with you from Moosehead."

All the preliminary dispatches sent from Brownville Junction were signed in the name of an assistant superintendent, whilst the final order was in the name of MacKinnon, the superintendent of the road; the reason for it being that the printed rules of the company prescribe that no special engine shall be run upon the road unless by the latter's authority.

The plaintiff with five other men, conductor Cole included, proceeded with his engine in execution of the order committed to him, running at the rate of about twenty miles an hour until he suddenly came upon the disabled train, which was somewhat hidden from his view by an embankment at a curve in the road, and the two engines came in collision, thereby causing plaintiff's injury.

The action charges negligence against the corporation, the jury, under the direction of the court, sustaining the charge. To some of the rulings of the court the defendants take exception. Undoubtedly the issuing of the order, whether a rightful or wrongful act, was, as between these parties, the proximate cause of the accident. The plaintiff contends that the evidence shows the act was negligence *per se*, the defense, on the other hand, contending that it proves legal justification. The question of defendants' negligence was not submitted to the jury, the judge, ruling *pro forma*, as a matter of law, that the facts proved negligence. We think this erroneous, and that the most favorable position possible to be accorded the plaintiff, would be to allow the jury to determine that question for themselves.

The defendants are not liable for the result of the accident unless their superintendent was guilty of negligence. While Cole's mistake was one of almost criminal carelessness, the corporation would not be subjected to liability on that account, inasmuch as engineers and conductors are regarded in this state as fellow-servants. The best cases on this branch of the law do not subject a master to liability to his servant except for the consequences of his own negligence or misfeasance. It is not an absolute, unconditional liability. But the act of a superin-

tendent is the act of the corporation. His negligence is the negligence of the corporation.

It is contended in behalf of plaintiff that the issue on the question of negligence was one of law rather than of fact, for the reason that the testimony was undisputed. But this position leaves out of view the important consideration that the deductions of fact to be drawn from the evidence were disputed. The more correct statement of the rule is that, when the facts are undisputed, and the conclusion to be drawn from the facts is indisputable, the question may be controlled by the court. The parties differed widely on the interpretation of the evidence. The rule invoked by the plaintiff is more adapted to commercial cases than to those of negligence. In any case where intention is to be discovered, exigencies weighed, or matters of expediency considered, although the testimony may not be conflicting, still unless the case is so palpably right or wrong that there can be but one opinion about the case, the question is for the jury and not the court. Such interpretations arise more often in negligence cases than any other. The negligence of neither party can be conclusively established by a state of undisputed facts from which different inferences may be fairly drawn, or upon which fair-minded men may arrive at different conclusions. *Nugent* v. *Boston C. & M. R. Co.* 80 Maine, 62, and cases cited.

The text writers declare the rule that in cases of negligence the question is especially one of fact for the jury. The judge may decide whether there is any evidence of negligence at all to go to the jury ; a mere scintilla of evidence not being enough. 2 Thompson, Neg. 1235 ; Cooley, Torts. 669 ; Shearman, Neg. 19 ; Whittaker's Smith on Neg. 38, and numerous citations in note.

In the present case the defense, as before said, contends that the act of the superintendent was not a negligent act, either as a matter of fact or of law. Certainly the circumstances to be considered in justification of the conduct of the superintendent are of great weight. Relief must be sent to the disabled train. The news of the accident and of the location of the train came from an intelligent and trusted conductor. There is nothing

doubtful or equivocal in the words of his dispatch. On the contrary, it gives definite information that the train is east of Mackamp and one mile therefrom. No other person could be consulted to confirm his statement, as no one knowing anything of the accident was within telegraphic reach. The superintendent must rely upon such information as could be obtained. His mind perhaps would naturally be more intent upon the distress of the train than its precise location. He ordered the plaintiff to go to the disabled train with his engine, requiring the conductor to accompany him. He had a right to expect that the engineer on the disabled train would be on a proper look-out for the approaching locomotive, and that the plaintiff would proceed on his mission with unusual carefulness as no special train or engine should be run without such precaution. He knew that the conductor would be upon the engine to direct or advise the plaintiff should he be running into danger. No rate of speed was dictated by the order, the plaintiff having a general discretion in the premises. No one would construe the order as meaning an exact mile, but only that distance by estimation. A strange thing it is, if plaintiff's story be true, that he and the conductor never passed a word with each other while the engine was on its passage or at any other time. The conductor, by his silence, exposed his own life to danger with his eyes open to it, as he must have known the lay of the land and the whereabouts of his train on the road. But we do not get the conductor's version of the events of the day as he was not a witness. Such a mistake might not occur once in a thousand times. It was reasonably expected that by the presence and assistance of the conductor the plaintiff would go safely to the train. How many men would have acted more judiciously than did the superintendent? It is urged on the plaintiff's side of the case that the order was couched in terms too peremptory, and that the superintendent should have made more searching inquiry of the conductor in order to test the reliability of the information conveyed by his dispatch. But it is to be remembered that the superintendent and conductor were many miles apart, and that the superintendent prepared the opportunity for

a personal interview between the plaintiff and the conductor, by which the plaintiff could ascertain fuller particulars than the superintendent had. And it is a remarkable fact, reluctantly disclosed in the plaintiff's testimony, that he had substantially all the information that the superintendent had to act upon. He knew that conductor Cole brought the news of the accident to Moosehead ; that he communicated it to Brownville Junction ; that there was no other source of information, and still he obeyed the order apparently without apprehension of danger. His own judgment suggested neither fear nor hesitation. The defendants contend that the plaintiff was himself guilty of negligence in his omission to communicate personally with the conductor, and that, if the superintendent could telegraph for particulars, the plaintiff could, at least, have asked for them.

The defendants assail the plaintiff's case from another position. Inasmuch as the dispatch to the plaintiff was really sent in the superintendent's name by the train-dispatcher at Brownville, the superintendent not being there at the time and not conusant of it, the plaintiff himself being fully aware of the facts, it is contended that the plaintiff cannot prevail in the action because he and the train-dispatcher were fellow-servants in the same employment. We do not assent to this position. It appears that it was customary for the train-dispatcher thus to use the superintendent's name, and that the practice was acquiesced in by the superintendent and other officials connected with the road. An act done for the superintendent by his authority, either general or special, is his act. The employee is not required nor permitted to investigate the question of authority. The superintendent's name conclusively imports authority, unless it be forged. The servant must obey or be discharged from his employment. It would greatly demoralize the service if it were otherwise. Performance of duty to the road places all consequent liabilities upon the road. The claim set up by the defense in this particular is repelled by the tenor of numerous cases from which has been deduced the following general declaration : "The master may by withdrawing himself from the management of his business, and putting it in the hands of another with full

power to act for him, make such substitute's act his own, and become liable for his injuries to servants in like manner as if they were committed by himself." Pierce Railroads, 367, and cases cited.

The other questions of the case easily dispose of themselves. On the first point only do we think the defendants have a cause for complaint.

*Exceptions sustained.*

LIBBEY, EMERY, FOSTER, HASKELL and WHITEHOUSE, JJ., concurred.