## OREGON SHORT LINE & U. N. RY. CO. v. FROST.

(Circuit Court of Appeals, Ninth Circuit.   June 15, 1896.)

NEGLIGENCE—FELLOW SERVANTS—TELEGRAPH OPERATOR AND TRAIN CREW.

> A local telegraph operator at a station on the line of a railroad, who receives and delivers the orders of the train dispatcher in respect to the movement of trains, is the fellow servant of the employés of the railroad company in charge of the train; and such employés, if injured in consequence of the negligence of the telegraph operator, cannot recover damages from the railroad company. Hawley, District Judge, dissenting.

In Error to the Circuit Court of the United States for the District of Montana.

This was an action by Hattie Frost, as administratrix of James Frost, deceased, against the Oregon Short Line & Utah Northern Railway Company, to recover damages for the death of the intestate. The plaintiff recovered judgment in the circuit court. A motion for a new trial was denied. 69 Fed. 936. Defendant brought error. Reversed.

Shropshire & Burleigh, for plaintiff in error.

Robinson & Stapleton and F. T. McBride, for defendant in error.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

GILBERT, Circuit Judge. The defendant in error was the plaintiff in the court below in an action brought by her as the administratrix of the estate of James W. Frost, deceased, to recover damages for his death. Frost was a locomotive engineer in the employment of the plaintiff in error on passenger train No. 5. On February 1, 1891, his train was running north from Ogden to Butte, and was due at Dillon at 2:37 p. m. At 1:05 o'clock on that day the train dispatcher at the superintendent's office at Pocatello had telegraphed an order to the operator at Dillon that train No. 5 should

wait at Dillon until 2:45 p. m. for train No. 32. Train No. 32 was a mixed freight and passenger train, running south from Butte to Dillon. The regular meeting point of these trains was at Dillon, but on the date aforesaid train No. 32 was behind time, and, in order to avoid its long delay at Apex, the order was given. Train 32 was at Glenn, a station 18 miles north from Dillon. The order of the train dispatcher was received at Glenn in due time, and was delivered to the conductor and engineer of the train. Under the order so received, train No. 32 proceeded towards Dillon, upon the supposition that train No. 5 would wait there, as directed by the train dispatcher. The operator at Dillon received the order 32 minutes before train No. 5 was due there, but he neglected to warn it on its arrival. It was his duty, on receiving such an order, to display a red signal, which would indicate to train No. 5 that there were orders for it. It was also his duty, under the rules of the company, after receiving such order and displaying the red signal, to reply to the train dispatcher, "Red displayed," but he was not to send such reply until he had in fact displayed the signal, and this it was his duty to do immediately on receipt of the order. The order was laid aside by him, and forgotten, and he made no answer that he had displayed the red signal, as required by the rules. Upon the arrival of train No. 5 at Dillon, receiving no special order that it should not proceed on regular schedule time, it proceeded on its way, stopping at the water tank, a short distance from the station, for water, and then resuming. It had gone but a short distance, when it met train No. 32. In the collision Frost was injured, and eight days afterwards he died from the effects of the injury.

This case presents the important question whether or not the local telegraph operator at the station, who receives and delivers the orders of the train dispatcher, is the fellow servant of the employés of the railroad company in charge of the train. The court charged the jury that it was the duty of the railroad company to give notice that it had changed the time of running the trains, and that, if it intrusted that duty to the telegraph operator, his acts were the acts of the company, and that if he was negligent in this matter it was the negligence of the company. It is conceded that the train dispatcher, in giving notice of a change in the running of trains, acts for and in behalf of the railroad company. He is in that respect a vice principal, not because of his attitude to other employés as their superior, nor because he has charge of a department, but because of the nature of the duty which he discharges. He is, for the time being, clothed with the responsibility which rests upon the company to furnish its employés a safe place of operation. The ordinary running of the train is established by a fixed schedule, of which all operatives have notice, and by which their acts must be governed. When occasion arises to disturb the regular schedule, the duty rests upon the company to give timely notice to those that are to be affected thereby. This it is the office of the train dispatcher to do. But when he has given that information to a local operator, is that duty discharged, or does there rest upon the com-

pany the further obligation to see that all of its servants through whose hands that message goes on its way to the train employés shall deliver it as given, and that in case of any failure in the line of communication the company shall be liable for the resulting injury? In support of the latter view it is argued that if the duty to notify the train operatives of a change in the time-table is personal to the company, and cannot be delegated to a servant, so as to excuse the company from liability, it follows that such power, since it may not be delegated to one servant, may not be delegated by him to another, and that the reasons which lead to the conclusion that the train dispatcher is a vice principal lead directly to the further conclusion that the local telegraph operator stands in the same attitude to the company, and that the duty the company owes of furnishing a safe place of operation to its employés cannot be discharged short of actual notice to those who are to be affected thereby, and whose personal safety is dependent thereupon. After a careful consideration of the question and of the strong reasons that may be urged in support of either view of this proposition, it is our conclusion that the better doctrine is that the local telegraph operator is the fellow servant of those who are in the control and management of the train. It is evident, and the court will take judicial notice of the fact, that a disturbance in the regular time schedule of trains is frequent and necessary in the operation of all railroads. It then becomes necessary to issue special orders for their direction. Conductors, engineers, and brakemen have knowledge of that fact, and they know when they enter into the employment of the railroad company that their notice of such orders must come through the local telegraph operator at the station, and that they incur the risk of accident through his negligence or mistake. The special orders issue, in the first instance, from the train dispatcher. It is obviously impossible for him to give personal notice to all who are to be governed thereby. The orders must, of necessity, be conveyed to some one in behalf of the others. The local telegraph operator, the conductor, the engineer, and the brakemen are all engaged in a common employment,—that of moving the train. The operator, it is true, is subject to no personal risk from any change in the time card, but that fact is not a controlling one in deciding who are his fellow servants. There must be some point where the responsibility of the company ceases. If it does not cease at the time when information is given to the operator, where shall it cease? Could it be said that a conductor who received from the operator a message from the train dispatcher, yet who failed to guide his action thereby, stands in the relation of vice principal to the conductor, engineer, or brakeman of another train, who may be injured by his negligence? or that, if the operator should receive instructions from the train dispatcher to send out a flagman to signal an approaching train, the company is responsible for the negligence of such flagman in failing to carry out such instructions? It seems just in principle to hold that the company has discharged its duty when it has given information to one of its servants who is engaged

in the common employment of the others that are to be affected thereby, and has instructed him to notify his co-employés, and that when the company has exercised due care in selecting such local operator in the first instance, and has not been negligent in employing or retaining him in his office, it has discharged its duty, and that such operator stands in the attitude of a fellow servant to the trainmen. This doctrine is sustained by the clear weight of authority. The leading case in its support is Slater v. Jewett, 85 N. Y. 62. There the question arose whether the operator and conductor were fellow servants of the injured servant, in the same common employment. It was held that the telegrapher, whose duty it was to receive and give information of the whereabouts of trains and communicate orders to those controlling them, was closely connected with the work of the conductor, which was that of moving the trains, and that both were engaged in the same branch of the defendant's business. The court said:

"It is not true that on an occasion like this it is the duty of the master, or a part of his contract, to see to it as with a personal sight and touch that notice of a temporary and special interference with the general time-table comes to the intelligent apprehension of all those whom it is to govern in the running of approaching trains. It is utterly impracticable so to do, and a brakeman or a fireman on a train knows that it is as well as any person connected with the business. He knows that trains will often and unexpectedly require to be stopped, and that such orders must, from the nature of the case, be given through servants skilled in receiving and transmitting them. If there is due care and diligence in choosing competent persons for that duty, a negligence by them in the performance of it is the risk of the employment that the employé takes when he enters the service. Such a variation, and the giving notice of it, is not like the supply of suitable machinery or of competent and skilled fellow workmen. It is the act of an hour, or of an instant, which, for any useful effect to be got from it, must be done at the instant, and that, too, from a distance."

The doctrine of Slater v. Jewett is not modified, as contended by the defendant in error, by the later decision of the same court in Sheehan v. Railroad Co., 91 N. Y. 332. That was a case where the train dispatcher telegraphed a local operator instructions to hold a certain train for orders. Instead of holding the train for orders, the operator held it until a certain other train arrived at his station, when he permitted it to proceed, in consequence of which a collision occurred. The decision in the court of appeals was that, under all the circumstances, the trial court did not err in submitting to the jury the question of the company's negligence, since the jury might properly have found negligence from the fact that the orders were not sent directly to the conductor of the train, which was to be governed thereby, but were communicated to a third person, the operator, who was instructed to hold the train for orders. Said the court:

"It is one thing for the orders of the master to go by report or hearsay to the servant, and quite another when they are received by him directly, and without an intervener."

The circuit court of appeals of the Sixth circuit, in deciding the precise point here involved, said, and correctly said, of the telegraph operator:

"He and the engineer and the conductor work together, at the same time and place, for a common employer, with an immediate common object, namely, the proper running of trains. It is essential, in the operating department of a railroad company, that there should be provision for communicating to those in charge of different trains the whereabouts of other trains, to avoid collision. This information is given by means of the general time-table and general rules for the running of trains with reference to each other, which the employés in charge of each train are obliged implicitly to obey. But it often happens that the general time-table must be varied from, and these variations must be communicated to those in charge of trains. This is effected usually by telegraphic orders from the superintendent or the train dispatcher, who has supreme control of the running of trains. The information is also communicated by means of flagmen, by means of torpedoes, by red lights and green lights upon trains, by the block-signal system, and in other ways. The subordinate employés, whose duty it is to transmit the orders of the officer in control, or to give information as to the presence of trains upon any part of the track, without special orders, are engaged at the same time and place with the persons operating the train, in a common employment, having an immediate, common object, namely, that of the running of trains, and therefore are fellow servants. The man who makes the signal at the station to the engineer on the approaching train to stop is as much engaged in the running and operation of that train as the flagman sent out ahead to signal the condition of a switch. Neither exercises the discretion or the judgment or the control of the master, but each contributes his part to the safe running of the train. There can be no separation of the signal department and the operating department, for the employés engaged upon the train, in the actual, manual operation of the train, are expected to be part of the signal department of the company. The man who puts out the green light at the back of the train, to indicate that a train is following, communicates to every station agent, every conductor, and every engineer who sees it knowledge upon which they, each of them, must act; and yet it can hardly be said that the brakeman, in displaying this green light, is acting in a different department from the man who opens and closes the throttle valve of the engine." Railroad Co. v. Camp, 13 C. C. A. 233, 65 Fed. 952–964.

Of similar purport are McKaig v. Railway Co., 42 Fed. 288, and Reiser v. Pennsylvania Co., 152 Pa. St. 38, 25 Atl. 175. The cases holding otherwise are Railroad Co. v. De Armond, 86 Tenn. 78, 5 S. W. 600, and Madden's Adm'r v. Railroad Co., 28 W. Va. 610, neither of which, however, is authority upon the question here considered, for they are each based upon the rule of the different department system which obtains in those states, under which it is held that the local telegraph operator is not the fellow servant of the trainmen; not, indeed, upon the ground that he is charged with the performance of the master's duty as to them, but because he is held to be a servant in a different department of service from theirs.

It is urged that this court has expressed a different view of this question in the case of Railroad Co. v. Charless, 2 C. C. A. 380, 51 Fed. 562. The question decided in that case was whether or not the complaint had stated facts sufficient to constitute a cause of action. One of the several grounds of negligence alleged in the complaint was that a telegraph operator at a certain station was aware of the peril to which the plaintiff was exposed, and had negligently failed to notify him thereof. In referring to this allegation the court said:

"It was the duty of the company, as admitted in its amended answer, to furnish its employés engaged in maintaining its track and roadbed with information concerning the movements of trains over the sections on which

they were employed. In the present case it is alleged that this duty was required to be performed by the telegraph operator at Cheney, but the designation of the official is immaterial. It was a direct, positive duty which the company owed such employés as were exposed to danger by the movement of trains. In Lewis v. Seifert, 116 Pa. St. 628–647, 11 Atl. 514, it was determined that a train dispatcher, wielding the power and authority of a railroad company in the moving of trains, in the changing of schedules, or the making of new ones as exigencies required, is not a fellow servant with a train employé."

It is clear from this quotation from the opinion that the court understood the allegation of the complaint and the admission of the answer to place the operator therein referred to substantially in the attitude of a train dispatcher, whose duty it was to order the movement of trains, and not in that of a local operator, through whom the orders of a superior were to be delivered. The question of the present case was, therefore, not involved, and there is nothing in the opinion to conflict with the conclusion which we have reached.

It is urged that, in any view of the facts of the case, there was negligence on the part .of the defendant, since the rules of the company required an operator receiving special orders concerning the movement of trains to display a red signal immediately on receipt of the order, and to telegraph back to the train dispatcher, "Red displayed," and that in this instance the train dispatcher knew of the failure of the operator to display the red signal, for the reason that he received no such response to his dispatch, and that he was negligent in that he made no complaint to the operator, or inquiry as to the reason of the omission. The company's negligence in this respect, however, was not the ground of recovery laid in the complaint. The allegations of negligence are confined specifically to the action of the local operator at the station. The question of the negligence of the train dispatcher was not referred to in the pleadings, nor was it submitted to the jury. The charge of the court permitted them to consider the negligence of the local telegraph operator only, and not that of the train dispatcher. They were instructed that, if they found the operator negligent, it was the negligence of the company. It follows from these views that the judgment must be reversed, at the cost of the defendant in error, and the cause remanded for a new trial.

HAWLEY, District Judge (dissenting). I am of opinion that the decision of this court in Railroad Co. v. Charless, 2 C. C. A. 380, 51 Fed. 562–569, is applicable to the facts of this case; that it authorized the giving of the instruction herein complained of; that it is correct, and should be adhered to, notwithstanding the fact that other circuits have laid down a rule somewhat at variance with the principles therein enunciated. In that case it was expressly held that an allegation which substantially stated that the telegraph operator at the local station negligently failed to notify plaintiff and his co-employés that in going west on the section at that time they would meet a freight train going east, was a sufficient allegation to charge negligence upon the company. The court said

that the giving of this notice "was a direct, positive duty, which the company owed such employés as were exposed to danger by the movement of the trains." It is proper to add that the Charless Case was taken to the supreme court of the United States, and was there reversed. 162 U. S. 359, 16 Sup. Ct. 848. But the reversal was upon other grounds. As the direct point herein referred to was strongly urged as error in this court, it is fair to presume that it was directly relied upon in the supreme court. The natural inference to be drawn from the facts is that the supreme court did not consider that this point was erroneously decided by this court. The real controversy in the present case is not to be confined to the question whether or not the local operator is a fellow servant with the conductor and engineer in the movement of the trains of the railroad company. As was said in Railroad Co. v. Baugh, 149 U. S. 368–387, 13 Sup. Ct. 921: "The question turns rather on the character of the act than on the relations of the employés to each other. If the act is one done in the discharge of some positive duty of the master to the servant, then negligence in the act is the negligence of the master." It is the duty of a railroad company to notify the conductors and engineers in charge of the moving trains of any change which is made in the time of running the trains, in order to prevent accidents, injury, and loss of life to its employés, which would otherwise inevitably occur. When the regular or ordinary running of the trains is fixed by a schedule adopted by the company, and the conductors and engineers have notice thereof, they must be governed thereby. But whenever, from any cause, this schedule is departed from by the orders of the company, it becomes as much the duty of the company to notify the conductors and engineers of the change in the schedule time as it was, in the first place, to inform them of the regular schedule adopted by the company. All of the authorities declare that it is the duty of a railroad company to exercise reasonable care in providing a safe place for its employés to work. This can only be done by notifying the employés in charge of and operating the trains, as they are the employés who are immediately affected by the change in the schedule time, and their personal safety is dependent upon their receiving notice thereof. The change in the schedule time necessarily placed the conductor and engineer of train No. 5 in a hazardous position. Unless they received notice of the change, they were liable, in the regular and ordinary discharge of their duty, without any fault whatever on their part, to be put into a place of absolute danger. This was not one of the perils incident to their employment. It necessarily follows from these views that the company could not relieve itself of responsibility unless the notice sent by the train dispatcher to the local operator was either personally given to the conductor in charge of the train, or the "red signal" displayed, as required by the rules of the company. This conclusion, in my opinion, is sustained by the weight of reason and authority. In Sutherland v. Railroad Co., 125 N. Y. 737, 26 N. E. 609, 610, the court said:

"The red flag signal was one of the means of notifying an approaching train to stop; but, when special orders were given to control the running of trains,

upon the observance of which the lives of persons depend, the jury, we think, had a right to determine whether the company had discharged its whole duty by giving the order to the operator, without communicating it to the trainmen at some point before the train reached Petersburgh Junction, which, so far as appears, might have been done after the order to hold the train had been made, The jury, within the cases of Sheehan v. Railroad Co., 91 N. Y. 332, and Dana v. Railroad Co., 92 N. Y. 639, were entitled to say whether the company performed the full measure of its duty, in view of all the circumstances, in taking no means to notify train No. 1 of the order, except by the order to Johnson, relying exclusively on his performance of his duty."

In Railroad Co. v. Poirier, 15 C. C. A. 60, 67 Fed. 881-889, this court said:

"It was the duty of the defendant [the railroad company], when it put the second train in motion, to make suitable provision and to exercise ordinary and reasonable care for its safe management, to guard against danger or accidents. This was a positive duty upon the part of the defendant, which it owed to its employés; and if this duty was delegated to any particular agent, and such agent was negligent in the performance of that duty, his negligence in that respect is the negligence of the defendant."

It will be observed that in all of the decisions of the supreme court of the United States where the question is discussed the duty which the railroad company owes to its employés, to exercise reasonable care in providing a safe place for them to work, is put in the same, category, and rests upon the same plane, and is sustained upon the same reason, as is the obligation of the company to exercise reasonable care in furnishing to its employés suitable machinery to work with, and of keeping such machinery and appliances in proper repair. No greater or less duty is required in the one case than in the others. Keeping this constantly in view, it must necessarily follow that if the duty of the railroad company in the present case was discharged when its vice principal, the train dispatcher, directed the local operator at Dillon to notify the conductor and engineer of train No. 5 of the change in the time-table, then it would in all cases be released from liability from accidents arising from its failure to provide suitable machinery, or to keep it in necessary repair for the safe movement of its trains, whenever it had selected a competent person, and delegated him to perform such duties, notwithstanding his negligence in failing to perform such duty. This would be so, independent of any question as to whether or not such person is a fellow servant with the conductor and engineer of the moving trains. What is the controlling principle which governs all these cases? Take the case of Railway Co. v. Daniels, 152 U. S. 684–689, 14 Sup. Ct. 756, where an accident occurred by reason of the unsafe condition of the wheels of the car in which the brakeman, in the regular discharge of his duty, was required to be. The trial court instructed the jury as follows:

"If you find that there was a want of care and diligence on the part of the persons engaged in inspecting the wheels of the cars of defendant, and that the accident was caused thereby, it is not a defense for the defendant to show that it used proper diligence and care alone, and only in the selecting of such agents, but the defendant is responsible for the acts of his employés in repairing and inspecting machinery to the same extent as if he were himself present doing the act."

This instruction was sustained, and in the course of the opinion the court said:

"There can be no doubt that under the circumstances of the case at bar the duty rested upon the company to see to it, at this inspecting station, that the wheels of the cars in this freight train, which was about to be drawn out upon the road, were in safe and proper condition, and this duty could not be delegated, so as to exonerate the company from liability to its servants for injuries resulting from the omission to perform that duty, or through its negligent performance."

Was it not as much the positive duty of the company in the present case to notify the conductor and engineer of train No. 5 of the change in the schedule time, as it was in the Daniels Case to provide the employés with a safe wheel? If the railroad company in that case was not relieved from responsibility when it selected a competent person to act for it, how can it logically be said that the company is relieved in the present case because its whole duty was performed when it delegated the duty of notifying the conductor and engineer to the telegraph operator who was a competent person? Under the decisions of the supreme court, the question as to whether or not the local operator in this case, or the inspector of the cars in the Daniels Case, was a fellow servant with the operatives on the train, is not the controlling question. It being a positive duty of the company to give the notice, the company should be held responsible for the negligence of the employé to whom it delegated that particular duty. Railroad Co. v. Peterson, 162 U. S. 346, 353, 16 Sup. Ct. 843, 845, which is the latest exposition of that court upon this subject, announces the true rule as follows:

"The general rule is that those entering into the service of a common master become thereby engaged in a common service, and are fellow servants; and, prima facie, the common master is not liable for the negligence of one of his servants which has resulted in an injury to a fellow servant. There are, however, some duties which a master owes, as such, to a servant entering his employment. He owes the duty to provide such servant with a reasonably safe place to work in, having reference to the character of the employment in which the servant is engaged. He also owes the duty of providing reasonably safe tools, appliances, and machinery for the accomplishment of the work necessary to be done. He must exercise proper diligence in the employment of reasonably safe and competent men to perform their respective duties; and it has been held in many states that the master owes the further duty of adopting and promulgating safe and proper rules for the conduct of his business, including the government of the machinery and the running of trains on a railroad track. If the master be neglectful in any of these matters, it is a neglect of a duty which he personally owes to his employé; and, if the employé suffer damage on account thereof, the master is liable. If, instead of personally performing these obligations, the master engages another to do them for him, he is liable for the neglect of that other, which, in such case, is not the neglect of a fellow servant, no matter what his position as to other matters, but it is the neglect of the master to do those things which it is the duty of the master to perform as such."

See, also, Railroad Co. v. Seeley, 54 Kan. 21–30, 37 Pac. 104; Railroad Co. v. Kneirim (Ill. Sup.) 39 N. E. 324.