NORTHERN PAC. RY. CO. v. MIX.

(Circuit Court of Appeals, Ninth Circuit. February 24, 1903.)

No. 854.

1. MASTER AND SERVANT—RAILROADS—COLLISIONS—INJURIES TO BRAKEMAN.

Plaintiff, who was head brakeman on a train known as "162 East," was injured by a head-end collision with another train known as "159 West." Train 162 East was started under an order which made no reference to train 159 West, and no effort was made by defendant's train dispatcher to inform the operatives of train 162 East of the other train until some time after the train had left B., and until after the lapse of time within which train 162 East should have been expected to pass the only station at which it could have received such information, when the dispatcher called the operator, who erroneously reported that the train had not yet arrived, he having been asleep when the train passed. The dispatcher then issued orders which resulted in the collision. *Held*, that whether the train dispatcher was guilty of negligence in failing to timely send notice to train 162 East where to meet and pass 159 West was for the jury.

**2.** SAME—COMPLAINT—NEGLIGENCE.

A complaint charging that defendant sent plaintiff, as brakeman on one of its trains, along a single track, and negligently omitted to give plaintiff, or any of the crew operating with him, notice that it was at the same time sending another train in the opposite direction on the same track, which must necessarily meet in a very short time, without making any provision for either train to take a siding, contained a sufficient averment of negligence.

**3.** SAME—INSTRUCTIONS.

In an action for injuries to a brakeman, an instruction that it was defendant's duty to all operatives to prevent passing trains from colliding, and to exercise ordinary and reasonable care to cause to be notified the operatives on one train of the approach of a train in the opposite direction, and to give such orders as will insure the safe passage of the one by the other was not error.

**4.** SAME—TRAIN DISPATCHER—REPRESENTATION OF RAILROAD COMPANY.

A railroad train dispatcher issuing orders for the movement of trains in the name of the superintendent represents the railroad company, which is liable for such dispatcher's negligence.

**5.** SAME—RAILROAD RULES—DUE CARE.

The rules of a railroad directing the action of the train dispatcher are prima facie evidence of what is due care on his part, and a violation thereof is prima facie evidence of negligence.

**6.** SAME—APPEAL—RIGHT TO ALLEGE ERROR.

Where a railroad collision in which plaintiff, a brakeman, was injured, was caused by a train dispatcher's negligence in failing to obtain seasonable information of the movement of a train and in issuing a train order on erroneous information received from a local telegraph operator that a train, which had passed his station while he was asleep, had not passed, defendant was not entitled to complain of an instruction that the local telegraph operator was a fellow servant of plaintiff, and, if the accident happened solely through his negligence, defendant would not be liable.

In Error to the Circuit Court of the United States for the District of Montana.

Wm. Wallace, Jr., for plaintiff in error.

T. J. Walsh, for defendant in error.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

ROSS, Circuit Judge. The collision which gave rise to this action for damages occurred on the Rocky Mountain Division of the Northern Pacific Railroad, about 1¼ miles east of Hellgate station, between a train known as "162 East," consisting of 39 cars loaded with freight, and one known as "159 West," consisting of a car of horses and a caboose. Both trains were extras, and were, therefore, operated not according to the regularly prescribed schedule, but under special orders of the train dispatcher, acting for and in the name of the superintendent of the road. Missoula, Mont., was the division headquarters, at which was located the chief dispatcher for the division, although it seems that for convenience in train dispatching the division was divided into different dispatching districts; that part of the main line between Helena and Missoula being called the "First District," that part west of Missoula the "Second District," and the branch leaving the main line at Garrison and running to

¶ 4. See Master and Servant, vol. 34, Cent. Dig. § 495.

Silver Bow and Butte, Montana, being called the "Montana Union Branch." In the early part of the night of December 24, 1899, train 162 East, on which the plaintiff below (defendant in error here) was head brakeman, was at Missoula, east-bound, and train 159 West was at Silver Bow, west-bound. 162 East was, therefore, the superior, and 159 West the inferior, train. Eastward of Missoula, to and including Garrison, the stations, sidings, and distances are as follows: Bonner, 7.4 miles east of Missoula; Bonita, 18.1 miles east of Bonner; Carlan, 7.6 miles east of Bonita; Bearmouth, 7.8 miles east of Carlan; Hellgate, 5.3 miles east of Bearmouth; Drummond, 6.9 miles east of Hellgate; Garrison, 20.9 miles east of Drummond. Silver Bow is on the branch line 44.4 miles from Garrison. At the time in question the only night telegraph offices between Missoula and Garrison were at Bonita and Drummond, and there were none on the branch line between Garrison and Silver Bow.

The evidence shows without conflict that train 162 East was started from Missoula under "Train Order No. 91," to "run extra Missoula to Helena, and meet 2nd No. 53 and extra 153 West at Missoula, and meet extra 155 West at Bonner." That order was made "complete"—that is to say, it had been correctly repeated by the local operator to the dispatcher, and by him signed and entered of record, at 9:38 p. m.—and about 10:40 p. m. of December 24th train 162 East left Missoula, east-bound. Order No. 91 was the only order the conductor or engineer or any other of the crew of train 162 East received prior to the collision. It made no mention, as will have been seen, of train 159 West. Shortly after train 162 East left Missoula, to wit, at 11:21 p. m. of December 24th, the train dispatcher at that place sent "Order No. 98" to the conductor and engineer of train 159 West at Silver Bow to run 159 West extra from Silver Bow to Garrison. Shortly after 1 a. m. of the 25th of December, and just before train 159 West arrived at Garrison, the dispatcher called the local operator at Bonita, and asked him about train 162 East. The response was, "Not here yet." At 1:05 a. m. of December 25th, train 159 West arrived at Garrison, and at 1:10 a. m. the local operator there reported to the dispatcher at Missoula that it would be ready in 10 minutes to start west. About 1:10 a. m. the dispatcher again called the local operator at Bonita, and asked if there was any sign of 162 East, to which inquiry he replied, "No sign." Thereupon, and at 1:19 a. m., the dispatcher sent to Bonita "Train Order No. 3" to 162 East to meet 159 West at Carlan. This order was also given, at 1:20 a. m., to train 159 West at Garrison. Shortly after train 159 West left Garrison, the dispatcher instructed the operator at Drummond to put out the "red signal," so that he could reach that train in the event he wished to change the place of its meeting with train 162 East. On receiving notice of the arrival of 159 West at Drummond about 1:57 a. m., the dispatcher called the operator at Bonita again, asking for train 162 East, the latter replying, "Not here yet." The dispatcher then asked if he was sure they had not gone by, and the local operator replied, "Yes." The dispatcher asked, "Yes what?" and the operator replied, "Yes, I am certain that 162 East has not passed." Thereupon the dis-

patcher issued "Train Order No. 4," to the effect that train 162 East and train 159 West should meet at Bonita instead of Carlan, which latter order became complete to train 162 East at Bonita at 2 a. m., and to train 159 West at Drummond at 2 :02 a. m. of December 25th. Neither order No. 3 nor order No. 4 was ever delivered to train 162 East, the evidence being that prior to the issuance of either of those orders train 162 East had passed Bonita station. Having passed extra 155 West at Bonner, as directed in the order under which it was running, train 162 East reached Bonita about 12 :35 a. m. of December 25th, found the white signal out, indicating its right to continue its journey, and, after stopping at the water tank at that station for about 15 minutes, proceeded eastward without any knowledge on the part of its conductor, engineer, or any other member of its crew that train 159 West was coming westward on the same track, until the collision occurred. Such is the undisputed evidence in the case.

The evidence further shows without conflict that the local operator at Bonita was asleep when train 162 East passed that station, which accounts for his answers to the two inquiries made of him by the dispatcher concerning that train. But according to the evidence the dispatcher did not even attempt to notify train 162 East of the fact that train 159 West was traveling westward, nor did he make any inquiry concerning train 162 East until after the latter had not only actually passed, but until after the lapse of time within which it should have been expected to pass, the only station at which it could, by any possibility, have received such information, namely, Bonita ; for, as has been seen, train order No. 3, sent by the dispatcher from Missoula, was not sent to the operator at Bonita until 1 :19 a. m., nor was any inquiry made of him until after 1 a. m. of the 25th, prior to both of which times train 162 East had passed Bonita, having arrived there at 12 :35 a. m. and left at 12 :50 a. m. of the 25th. Of course, if the operator at Bonita had been awake, as he should have been, and had informed the dispatcher, in answer to his inquiries concerning train 162 East, that it had already passed Bonita, the dispatcher might have held train 159 West at Drummond, or perhaps have put it on some other siding, and thus have avoided the collision. But even if, in giving his untrue answers to the dispatcher's inquiries, the operator at Bonita could properly be regarded as a fellow servant of the crew of train 162 East, that would not relieve the defendant company of the charge of negligence committed by its representative, the train dispatcher, in failing to send timely notice where to meet train 159 West. He knew that train 162 East was at Bonner about 11 :35 or 11 :40 p. m. of the 24th, for train 155 West passed it there, and reported that fact to him on its arrival at Missoula at 12 :10 a. m. of the 25th. The distance from Bonner to Bonita is but 18.1 miles, and the chief dispatcher himself testified that, according to his figures, train 162 East must have left Bonner about 11 :35 or 11 :40 p. m., and that according to his experience it would take it about 1 hour and 15 minutes to run to Bonita, although freight trains of that class, said the witness, "have made the run in much less than that time—an

hour or less."· The plaintiff's testimony is to the effect that the average running time of such trains between those stations is 1 hour and 5 minutes, and that on the occasion in question it was about 1 hour. There was no error in permitting the usual running time between Bonner and Bonita to be shown, for it bore directly upon the question of what was timely notice by the dispatcher to train 162 East where to meet train 159 West. Taking the running time as 1 hour and 15 minutes, and the time of departure of train 162 East from Bonner as 11:35 or 11:40 p. m. of the 24th, it should have been expected to reach Bonita at 12:50 or 12:55 a. m. of the 25th. That station, it is well to repeat, was the only station at which it was possible for the dispatcher to notify train 162 East that it must necessarily meet train 159 West going in the opposite direction. Yet it was after 1 a. m. of the 25th before the dispatcher made any effort to get into communication with train 162 East.

In respect to these matters there is, as has been said, no conflict in the evidence. The court below was not only justified in submitting the question of negligence to the jury, but we are of opinion that the evidence is amply sufficient to sustain the verdict against the defendant · company on the ground of the negligence of the company's representative, the train dispatcher. Moreover, because we held, in Oregon Short Line & U. N. Ry. Co. v. Frost, 21 C. C. A. 186, 74 Fed. 965, as have other courts, that a local operator, in delivering orders from the train dispatcher to the trainmen, is a fellow servant of the latter, it by no means follows that in answering the inquiries of the train dispatcher, upon which he may or may not issue orders, the local operator is to be regarded as a fellow servant of the trainmen. That question, however, we find unnecessary to decide in this case, for the reason already suggested.

It will be observed that every order issued to either of the trains in question was issued by the dispatcher in the Missoula office, so that the circumstance urged by counsel for plaintiff in error that the Rocky Mountain Division was divided into different dispatching districts is without significance. So far as these particular trains are concerned, at least, their movements were directed entirely by the dispatcher at Missoula.

In the view we take of the case, it is unnecessary to consider the ruling of the trial court in excluding the letter of the local operator at Bonita, written the day after the collision, confessing that he was asleep when train 162 East passed his station, and endeavoring to explain his action in running away immediately after hearing of the accident.

The objection that the complaint does not charge the defendant company with any negligence is ·without merit. It charges that the defendant sent the plaintiff, as brakeman on one of its trains, along its single track, and negligently omitted to give the plaintiff, or any of the crew operating with him, notice that it was at the same time sending another train in the opposite direction on the same track, which trains must necessarily meet within a very short time, and without making any provision for either train to take a siding. That is a sufficient averment of negligence.

It is contended on behalf of the plaintiff in error that the trial court erred in instructing the jury that it was the duty of the defendant company "to give such orders as will insure the safe passage of the one [train] by the other." The court, after stating that the plaintiff alleged, in effect, that the defendant company negligently omitted to inform him, or any of the operatives on his train, that the other train was approaching, and that the collision occurred by reason of the negligence of the defendant in that regard, instructed the jury as follows:

"It is the duty of the defendant company to all operatives upon its road to take all reasonable care and precaution to prevent opposing trains on its line of railway from colliding, and to exercise ordinary and reasonable care to notify, or cause to be notified, the operatives upon one train of the approach of a train in the opposite direction, and to give such orders as will insure the safe passage of the one by the other.

"With regard to the movement of trains, the train dispatcher stands in the place of the defendant. His orders are issued in the name of the superintendent, representing the defendant, and for any negligence on the part of the train dispatcher the defendant is liable. If, accordingly, you find from the evidence that the failure of the operatives on train 162 East to receive notice of the approach of 159 West was due wholly or in part to any negligence on the part of the train dispatcher, then the defendant company was negligent, and your verdict should be for the plaintiff. It is not necessary, in order that the plaintiff may recover, that the negligence of the train dispatcher should be the sole cause of the collision; if his negligence contributed to—that is to say, had a share in producing—the injury, the company was liable, even though the negligence of the telegraph operator at Bonita also contributed to the collision.

"It was the duty of the defendant railway company, when it put the two trains in motion in opposing directions on the same track, if it did so, to make suitable provision and to exercise ordinary and reasonable care for their safe management, guarding against danger of accidents. This was a positive duty upon the part of defendant, which it owed to its employés; and if this duty was delegated to any particular agent, such as a train dispatcher, and such agent was negligent in the performance of that duty, his negligence in that respect is the negligence of the defendant.

"It was the duty of the defendant company to regulate the time and manner of running its trains so as to avoid collisions, and to exercise reasonable care to enable all its servants engaged in operating any particular train upon its line of railway, and who would be imperiled by a collision, to know when a train might be expected, which would be likely to collide with the other train. As to what is ordinary and reasonable care depends upon the circumstances and upon the danger to be apprehended. The greater the danger to be apprehended, the greater should be the care exercised.

"In considering the question as to what is due care on the part of the train dispatcher, you are advised that the rules of the defendant company, so far as they purport to direct the action of the train dispatcher, are prima facie evidence of what is due care on his part; and a violation of these rules by the train dispatcher would be prima facie evidence of negligence on his part. The position of train dispatcher of a railway company is one calling for the exercise of a high degree of care and caution. * * * One [who] enters into the service of another and engages in a particular employment is presumed to do so with a knowledge of and a taking of the risks of its ordinary hazards and dangers, in which the negligence or carelessness of a fellow servant or fellow servants is included.

"The duty alleged as owing by defendant to plaintiff in paragraph 4 of the complaint was to advise the servants operating any particular train as to where it would be met or overtaken by any other train; and, second, to give train crews orders where they should await other trains to pass them. The law does not demand that the railway company shall see to it, under all circumstances, that such directions actually reach the train crew.

121 F.—31

"The standard system of train movements, as in force upon the Northern Pacific Railway, is a reasonably safe system for the movements of trains, and in this respect, as to the adoption of the system, the defendant has complied with its duty. Under this system the dispatcher gains his information of the whereabouts and of the arrival and departure of trains from the local telegraph operator. The local telegraph operator is a fellow servant of the plaintiff, and, if an accident happens solely through the carelessness or fault of the local operator, the defendant would not be responsible to the plaintiff in damages therefor. If the collision in the present instance was due solely to the local operator Laird's failure to report the passage of extra 162 East to the dispatcher, then the defendant is entitled to a verdict in this action."

Whether the instruction last quoted concerning the local telegraph operator was entirely correct, in view of the facts of this case, we need not decide, for the reason already stated; but certainly the plaintiff in error has no cause to complain of it. The other instructions above quoted embody, we think, a full and correct statement of the law applicable to the evidence in the case. There was no error in refusing the instructions requested by the plaintiff in error, nor do we find any error prejudicial to the rights of the plaintiff in error in any of the rulings of the court below.

The judgment is affirmed.