SANTA FE PAC. R. CO. v. HOLMES.

(Circuit Court of Appeals, Ninth Circuit. February 6, 1905.)

No. 1,084.

1. MASTER AND SERVANT—INJURIES TO SERVANT—RAILROADS—TRAIN DIS-
   PATCHERS—NEGLIGENCE.
   In an action for injuries to a railroad engineer in a collision between
   two trains approaching each other, evidence *held* to sustain a finding of
   negligence of the train dispatcher in failing for 10 or 12 minutes to issue
   orders to one of the trains with reference to the passing, after he became
   aware that one of them had passed a station 2 minutes ahead of the
   time on which it was running, in violation of the orders, the probable
   effect of which was the collision which occurred.

2. SAME—VICE PRINCIPAL.
   A train dispatcher is a vice principal, and not a fellow servant, of an
   engineer of a train running under his orders.

   [Ed. Note.—For cases in point, see vol. 34, Cent. Dig. Master and Serv-
   ant, § 495.

   Who are fellow servants, see notes to Northern Pac. R. Co. v. Smith,
   8 C. C. A. 668; Flippin v. Kimball, 31 C. C. A. 286.]

In Error to the Circuit Court of the United States for the Southern
District of California.

The defendant in error brought an action to recover damages for personal
injuries sustained while he was in the employment of the plaintiff in error
as locomotive engineer in a head-on collision between a limited passenger
train west bound, known as "Train No. 3," and a passenger train east bound,
known as "Train No. 4," on which the defendant in error was on duty as an
engineer. He claimed that the collision and his injuries were caused by the
negligence of a train dispatcher of the plaintiff in error. The train dispatch-
ing office was at Needles, and its jurisdiction extended eastward from Needles
to Seligman, Ariz., as well as over the division westward from Needles. The
office was in charge of two chief dispatchers and six assistants, three of the
latter being assigned to each division. Assistant dispatcher E. L. Moore was
on duty and in charge of the work on the Arizona division, at and before
the time of the collision. On November 20, 1901, at 4:22 o'clock in the morn-
ing, train No. 3, west bound, and about two hours late, was at Kingman, and
train No. 4, east bound, and about twenty-two minutes late, was at Needles.
Both trains were run on regular schedule or time cards when on time or but
slightly delayed. On account of the unusual delay of train No. 3 on that
morning, it became necessary to issue special orders for the operation of
both trains over the Arizona division. At 4:12 a. m. Train Dispatcher Moore
promulgated a special order No. 22 in words as follows: "No. 3 eng. 482
has right of track over No. 4 eng. 444 & 450 to Needles but will run 1 (one)
hour & 50 mins. late Kingman to Needles." Copies of this order were sent
to Kingman and Needles, and were delivered to train No. 4 before 4:22 a. m.,
and to train No. 3 upon her arrival at Kingman at 4:21 or 4:22. At 4:22
train No. 4 departed from Needles, and ran east to Mellen, a distance of
11.9 miles, arriving there some time between 4:42 and 4:45, and stopped there
upon a signal that there were orders to be delivered to it. At 4:21, it being
apparent that No. 3 was more delayed in arriving at Kingman than had been
expected, Train Dispatcher Moore promulgated special order No. 23, as fol-
lows: "No. 3 eng. 482 will run two (2) hours late Kingman to Needles."
Copies of this order were sent to Kingman and were delivered to No. 3 at
the same time that order No. 22 was delivered to Train No. 4 on its arrival
at Mellen. The effect of these orders, when taken with the general rules of
the company, was that No. 3 was to be run in accordance with the time
card, except that it was to run two hours behind the scheduled time,
and was to have the right of track over the other train, and train No. 4 was

to look out for No. 3, and run with reference to its movement, as provided for by the special orders in connection with the time-table. These orders and the time-table would have made Franconia the probable place of passing of the trains. The crew of No. 4 left Mellen with the intention of running to Franconia, and there going upon the siding. Train No. 3 left Kingman at 4:31, six minutes late, according to its schedule as provided by the special order No. 23 and the time card. Yucca, which was 23.9 miles west of Kingman and 12.8 miles east of Franconia, was the only night telegraph office between those two points. Train No. 3, according to the special order No. 23 and the time card, should have passed Yucca at 4:57. It passed there at 4:55, or two minutes ahead of its schedule time. At 4:58 or 4:59 the local telegraph operator at Yucca reported to the train dispatcher Moore that No. 3 passed Yucca at 4:55. Train No. 4 left Mellen, which was the only night telegraph office between Needles and Franconia, between 4:45 and 4:47, and ran 6.8 miles to Powell, arriving there at 5 o'clock. A stop of three or four minutes was made there for the purpose of adjusting the flow of fuel oil in one of the locomotives, and the train then proceeded toward Franconia. In the meantime Train No. 3 arrived at Franconia six minutes ahead of the schedule time under the special order for leaving that station. The engineer, on approaching that station, whistled his signal to inquire if there were any orders there for his train, and received by semaphore signal from the operator the reply, "No orders from the train dispatcher." He went on his way without stopping at Franconia, and while going at a speed of from 60 to 70 miles an hour, at about 1¼ miles from Franconia, collided with train No. 4, which was running at a speed of from 40 to 50 miles an hour. Both trains were wrecked, a number of persons were killed, and several others, including the defendant in error, sustained serious injuries. The operator at Franconia had no orders that morning for either No. 3 or No. 4. The defendant in error, but for the collision, could have reached and placed train No. 4 on the siding at Franconia station two or three minutes before train No. 3 was due there. The plaintiff in error's rule No. 385 only requires the train not having the right of track to take a siding and be clear of the main track before the leaving time of the opposing train. The plaintiff in error answered the complaint, denying that it was negligent, and alleging that the injuries received by the defendant in error were the result of his own negligence and carelessness and that of his fellow servants and co-employés. The case, by the stipulation of the parties, was tried before the court without a jury, and the court found that the train dispatcher Moore was negligent in failing to use ordinary and reasonable care and precaution to prevent said engines and trains from colliding and in failing to give proper orders as to the movements of one of said engines and trains. Judgment was entered for the defendant in error in the sum of $9,000, with costs.

T. J. Norton, E. E. Millikin, and J. Wade McDonald, for plaintiff in error.

Waters & Wylie, for defendant in error.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

GILBERT, Circuit Judge, after stating the case as above, delivered the opinion of the court.

It is the contention of the plaintiff in error that the orders given by the train dispatcher, together with the regular time schedules and the rules and regulations of the company, known and understood by the crews of both trains, were sufficient, if observed, to have insured the safety of all concerned, and that the accident was the result of the failure of train No. 3 to observe said time schedule and rules and regulations in connection with the special orders, in that it passed Yucca two minutes ahead of time, and Franconia six minutes ahead of time; that there was no evidence to go to the jury tending to show

negligence on the part of the plaintiff in error; and that its motion for nonsuit should have been granted by the court. It is argued that, although the train dispatcher was advised that train No. 3 had passed Yucca two minutes ahead of its passing time for that station, the circumstances did not make it his duty to send additional orders to that train, he having previously promulgated orders sufficient to have insured the safe operation of both trains had such orders been obeyed, and that, having once given proper and sufficient orders in the premises, the duty of the master to the employé had been fulfilled; and, further, that the violation of the orders by the conductor and engineer of train No. 3 was an act, not of the plaintiff in error, but of the fellow servants of the defendant in error, for which the former is not liable. It is assigned as error that the trial court erred in holding that it was the imperative duty of the railroad company to have attempted to enforce obedience to order No. 23 by ordering train No. 3 to stop at Franconia. The finding of fact of the trial court must stand as the verdict of a jury if there was any evidence whatever to sustain them. We cannot say, on examining the evidence in the bill of exceptions, that there was no evidence of negligence on the part of the plaintiff in error. The trial court found that "train No. 3, which should have passed Yucca at 4:57, did so at 4:55, and that Train Dispatcher Moore was notified of that fact in time to have stopped said train at Franconia," and was of the opinion that in failing to so act he was negligent. Under the circumstances it would seem that ordinary prudence required of the train dispatcher that he fix a point of meeting of the trains; but, whatever may have been his duty in that regard, we think there was evidence of his negligence in the fact that, after he was advised that train No. 3 passed Yucca two minutes ahead of its time, and was running in violation of his orders, he failed to send orders to have that train stopped at Franconia. He had 12 or 13 minutes within which to make that order. He knew that No. 3 was running in advance of its schedule time, whether because of willful violation of the rules and orders or because on the downgrade track by these stations it had become uncontrollable, or because the engineer's watch was running slow; and he must have known that, if such violation of orders continued, there would probably be a collision. The engineer of train No. 3 testified that according to his watch he left both Yucca and Franconia on schedule time, and according to the orders. It may be that the error of the train dispatcher in not sending special orders to Franconia was induced by his own negligent entries on his train sheet, a record which he kept of the progress by hour and minute of both of the trains. On that train sheet it appears that he had marked "5:45" and "5:47" as the time of the arrival and departure of train No. 4 at Mellen, instead of the figures "4:45" and "4:47," which were the actual times at which that train arrived and left that station. The circumstances called for the exercise of the greatest care and diligence on the part of the plaintiff in error. It could not absolve itself from its duty by giving orders which, if strictly complied with, would have insured the safety of its employés. The duty was a continuing one, and called for the issuance of further orders as soon as it became ap-

parent that a known failure to comply with orders already made was likely to or might result in disaster.

There was no error in holding the plaintiff in error accountable for the negligence of the train dispatcher. Northern Pacific Ry. Co. v. Dixon, 194 U. S. 338, 24 Sup. Ct. 683, 48 L. Ed. 1006; Oregon Short Line v. Frost, 74 Fed. 965, 21 C. C. A. 186. In Northern Pacific Ry. Co. v. Mix., 121 Fed. 476, 57 C. C. A. 592, this court approved the instruction given by the trial court to the jury in such a case as follows:

"It is the duty of the defendant company to all operatives upon its road to take all reasonable care and precaution to prevent opposing trains on its line of railway from colliding, and to exercise ordinary and reasonable care to notify, or cause to be notified, the operatives upon one train of the approach of a train in the opposite direction, and to give such orders as will insure the safe passage of the one by the other. With regard to the movement of trains, the train dispatcher stands in the place of the defendant."

The plaintiff in error challenges the jurisdiction of the Circuit Court, and contends that the allegation of the complaint as to the organization and existence of the plaintiff in error is not sufficient to show that it was a corporation of the United States. That allegation is as follows:

"That the defendant is now, and at all times mentioned herein was, a corporation organized and existing under the laws of the United States, having its principal place of business at and being a resident of Los Angeles, in the state of California."

It is said that, in order to show jurisdiction in the Circuit Court, the complaint should have contained the allegation that the plaintiff in error was created by and existed under a law of the United States, and that it derives all its corporate powers and authority from such law, and that in the maintenance and operation of the railroad in question it was exercising or claiming to exercise such powers and authority. We think that all this is necessarily implied in the undenied allegation of the complaint. If the plaintiff in error was organized and existed under the laws of the United States, it could not have been organized or had its existence under other authority. It must have been a corporation of the United States, and as such entitled to maintain the action in the Circuit Court Pacific Railroad Removal Cases, 115 U. S. 1, 5 Sup. Ct. 1113, 29 L. Ed. 319.

The judgment of the Circuit Court is affirmed.